OTIS HOWARD & another *vs.* PROPRIETORS OF LOCKS AND
CANALS ON MERRIMAC RIVER.

The *St.* of 1836, *c.* 273, abolishing special pleading in civil actions, applies to
complaints for flowing under Rev. Sts. *c.* 116 ; and the respondent in such a
complaint may, under a specification thereof filed with the general issue, give
in evidence an agreement to maintain his dam, in whole or in part, for a fixed
price.
A defence to such a complaint that the respon lent has a right to maintain

his dam, in part, for an agreed price, is to be tried at the bar of the court of common pleas, and not merely in reduction of damages before the sheriff's jury.

Upon such a state of the pleadings, and the admitted fact that the respondent has maintained his dam higher than the agreement allowed, the court may direct a special verdict finding such facts.

THIS was a complaint for flowing, under Rev. Sts. c. 116, tried in the court of common pleas, March term, 1852, before *Merrick*, J., who, upon the pleadings and admitted facts in the case, directed the following special verdict, viz:

"The jury find that the said proprietors of the locks and canals on Merrimac River, have a right by law to erect, keep, and maintain their said dam across said river to the height at which it stood on the twenty-second day of September, in the year eighteen hundred and thirty-four, and to the height at which it stood on the twentieth day of June, in the year eighteen hundred and thirty-five. And they further find that the said proprietors have no right to erect, keep, and maintain as against the petitioners, the flash-boards now and usually kept and maintained on said dam, above the height of said dam as it stood at the times above specified."

The complainants excepted to the ruling and direction, and the case was argued in Boston, in January, 1854. The whole case sufficiently appears in the opinion.

*B. F. Butler*, for the complainants.

*J. G. Abbott*, for the respondents.

SHAW, C. J. The complainants filed their complaint at the December term, 1850, alleging that the respondents, on the 1st of January, 1847, were the owners of a dam across the Merrimac River in Chelmsford, and of water-mills near said stream, and for the purpose of working and maintaining them, did erect and maintain a dam across, &c., and that the complainants were seised and possessed of two parcels of land situated, &c., and described, &c: And that the said proprietors have raised, erected, closed, and kept up their said dam, during the time and for the purposes aforesaid, to an unreasonable height, and that said dam ought not to be kept up and closed the whole year, and that by reason, &c., the land

of the complainants has been overflowed, filled with water, rendered spongy and unproductive, and the grass and other products greatly diminished and deteriorated, wherefore they pray that a warrant may issue for a jury, &c.

This complaint was entered, and at the June term following, the respondents appeared and pleaded the general issue " not guilty." They also filed a specification of defence, stating that they had a right to erect and maintain their dam to the height at which it stood on the 22d day of September, 1834, and on the 20th of June, 1835, the same being without flash-boards, and that the complainants had received and acknowledged satisfaction for all damages to them occasioned, by reason of the erection and maintenance of their dam, to that height.

Upon the trial, the facts were conceded, and it was admitted that the complainants had been paid under an award for all damages caused to their land by the respondents' dam, as it was formerly raised to the height before stated; but that the dam had since been raised higher, by flash-boards, and permanently kept at such increased height. On these facts, the jury, under the direction of the court, returned a verdict in a special form, the effect of which will be considered hereafter.

Several objections were taken by the complainants to the pleadings and other proceedings in court, to the directions of the judge, and to the verdict, all of which are set forth in the bill of exceptions. These may be substantially resolved into three.

1. That the matter relied on in defence, could only be pleaded on the record, by a formal plea in bar, and could not be given in evidence under the general issue, although stated in the specification of defence, filed with the general issue; and that on the general issue, as pleaded in this case, the complainants were entitled to a general verdict.

2. That no special matter in bar could be pleaded or given in evidence, or otherwise be availed of by the respondents, by way of bar, unless it went to the whole matter of the complaint; and that any matter, operating as a partial bar, such

as a right to maintain their dam to a certain height, but not to the height complained of, could only be given in evidence before the sheriff's jury, in reduction of damages.

3. That the verdict, directed by the court, was wrong, because the court had no authority to require the jury to return a special verdict, and that upon the facts conceded, the complainants were entitled to a general verdict, and that the verdict, in the form returned, did not find the whole matter in issue.

We will first consider the pleadings. The revised statutes provide, *c.* 116, § 8, that the respondent may plead in bar of the complaint, that the complainant has no estate or interest in the land, or that the respondent has a right to maintain his dam for an agreed price, or without any compensation, or any other matter which may show that the complainant cannot maintain his suit; but not that the land described is not injured by the dam. The respondents have attempted to do this by pleading the general issue, and filing a specification of defence, alleging their right to flow, in consequence of a full compensation agreed for and received by the complainants. But the complainants insist that this could only be done in the form of a special plea in bar, according to the forms of special pleading. The act abolishing special pleading, *St.* 1836, *c.* 273, provides, that in every civil action, all matters of law or of fact, in defence, may be given in evidence under the general issue; and section 2, provides for notice to the opposing party, of all matters intended to be given in evidence by either party. But it is contended that a complaint for flowing, under the mill acts, is not a civil action, and, therefore, the statute in question does not apply. This act, abolishing special pleading, is very general in its terms, and seems, by the words used, to have been intended to supplant and supersede pleas in bar, in cases where they were before in use; it would not otherwise abolish special pleading. It is possible, that the term " civil action " may sometimes be so used as not to apply to a complaint for flowing; for though it is in many respects like an action at law, properly so called, commenced by writ, yet in some

respects it differs from it. This difference may have been marked in some cases, by using one as distinguishable from the other. By the jurisdiction act, for instance, *St.* 1840, *c.* 87, § 2, the court of common pleas shall have jurisdiction of " all other civil suits, and also of all complaints for flowing land." But this latter clause was, properly enough added, for greater caution and certainty, and to prevent doubts. It is in all cases dangerous, to take particular expressions, applicable to the subject under consideration, and to treat them, as general words, affording rules and definitions applicable to all cases. The precise meaning of the descriptive term " civil actions," must be judged by its connections and the manner in which it is used in the particular case.

The complaint for flowing is essentially a civil suit; it is a remedy afforded to an individual, to recover damages in a special form, for a private injury, in a case where, but for the special provisions in the mill acts, founded upon well-considered reasons of expediency, he would have a remedy in an action on the case. Besides; it cannot be presumed, unless from clear and explicit language, that the legislature intended to preserve the complicated rules of special pleading, with its replications, rejoinders, rebutters, and surrebutters, in a single case, of rare occurrence, when it was intended to be dispensed with, on account of its inconveniences, in all other cases. We are of opinion that the term " civil action," in this provision, is used, as it often is, in contradistinction to criminal proceedings, manifestly not intended to be affected by the act.

The complainants seek to derive some color for the argument, that a formal plea in bar was intended to be prescribed, in the case of complaints for flowing, from section 9, which provides that if any plea is filed by the respondent, the replication and other pleadings, and the trial of the issue, whether of law or fact, shall be conducted in like manner as in actions at the common law. But we think this is merely colorable, and can be easily explained. The act abolishing special pleading was passed in April, 1836. The revised statutes, though they did not go into operation until the 1st of May, 1836, yet were compiled, enacted, and published, in their

present form, the year preceding. At the time, therefore, that this enactment was framed and put into its present form in the revised statutes, special pleading was in use, and the plea in bar, in common form, would have been the proper mode of proceeding to bring the matter in bar before the court, in the case contemplated; but the act respecting special pleading, though subsequently passed, went into operation before the revised statutes, and extended to this as to other legal proceedings.

2. The next ground taken is, that no matter in bar is available, in whatever form pleaded or presented to the court, so as to have a trial of the right in that court, unless it goes to the whole complaint. The claim is, that unless it is a complete bar to the whole complaint, the cause must go to a sheriff's jury; and if there be any ground of defence, by disproving some substantive portion of the complainant's right to recover or by showing a right to flow in part, it must be given in evidence before the sheriff's jury, in reduction of damages.

So far as this is a matter of form, that a plea in bar must cover the whole complaint, it is a rule of special pleading, and falls with it. But, looking at the substance of the matter in bar, and the manner in which it is to be brought before the court under the present mode of proceeding, the objection is without foundation. The general issue is pleaded, and in form that does cover the whole complaint. If, then, the respondent has any matter in bar, he must avail himself of it by specifying it, with his plea, and offering it under the general issue. The question, then, is, whether, if he have a bar in part, but not to the whole, he can avail himself of it in court, before a warrant issues to the sheriff; and we think he can.

It is manifestly the policy of the mill acts to provide that, in the mere assessment of damages for flowing land, the parties interested shall have the judgment of a jury of experienced persons, who shall go upon the land, examine it, and form their opinions from such view and examination. But it is obvious that such a body of persons, going out under the inspection and care of the chief executive officer of the county, though well qualified to form a just opinion of the value of

land, its capacities for productive purposes, and the damage done to it by flowing, is not a tribunal suitably constituted to act judicially upon the right and title of the complainant to the land, of the right and privilege of the mill-owner to enjoy the benefit, as of right, without payment of damages; depending, as such right must, upon the just application of legal principles to the facts of each case. These are matters in bar, and we think it is the policy of the law that their rights, and the questions of law and fact on which they depend, shall be determined in a regular course of judicial proceeding, in a court duly constituted to hear and decide such questions of right, so as to leave nothing for the sheriff's jury but to estimate the damages in favor of one whose title to the land flowed is determined, and against one who has no ground to insist on the right of flowing, without paying damages therefor.

Such partial exemption may arise, either because the respondent may be able to show that, as to part of the complainant's described land, he has no estate or interest therein, or that he holds it by a tenure which precludes him from claiming damages. Suppose, for instance, that the complaint describes a tract consisting of five parcels. The respondent can prove, that as to lot A, the complainant had derived it, by descent or purchase, from one who had conveyed the mill to the respondent, or his predecessor, with the dam at its present height, and with all the right of flowing: As to lot B, that he himself had granted the land to the complainant, reserving his right of flowing: As to lot C, that the complainant derived it from an ancestor, who had filed a complaint against the mill-owner, and recovered, elected, and received gross damages: As to lot D, that the complainant had granted to the respondent, or his predecessor, the right to flow: And as to lot E, that the complainant had released all claim for damages. Might not the respondent, under proper specifications of defence, rely upon all these grounds? If his proof was sufficient as to part, and failed as to part, might not the jury so find, and the respondent have the benefit of the bar *pro tanto?* We think he might. If so, there seems to be **no**

reason why he might not specify one, two, or more of these grounds as a defence in part, and submit his answer that he has no cause to show why a warrant for a sheriff's jury should not issue as to the residue. The case would then go to the jury, under the general issue; but as, according to the specification of defence, there might be several matters in bar, some might be found for the respondent, and some against him, which must be specified in the verdict. In this respect, it would be like the verdict in a real action, where the demandant counts for one or more parcels of land, the verdict may and must, if the facts proved require it, find that, as to one part, specifying what part, the tenant did disseise the demandant, and, as to the other part, that he did not. This is not a special verdict, but a mere finding of the issue. The judgment would then follow the verdict, and the warrant to the sheriff would indicate to him the several points, to which the attention of the jury would be confined in the assessment of damages, fixing the height of flowing, the season of the year, and other points for their determination.

In like manner, we are of opinion that the respondent may specify matter which is in its nature a bar to any claim of damages, although it does not go to the whole extent of the complainant's claim. For instance, if the respondent has obtained by release, grant, or otherwise, a right to maintain his dam to a certain height, or for a certain season of the year, he may have that question of right, if contested by the complainant, tried in court, according to the course of judicial proceeding; and thus, if each partial right is established, the warrant to be issued for the part not so covered will be framed accordingly; and thus such matter of right will be withdrawn from the consideration of the sheriff's jury, leaving to them their appropriate duty of assessing damages, according to the rights thus established.

We are not aware that it has ever been denied, certainly it was not questioned in the present case, that when one, under the mill acts, has raised a dam to a certain height, and a mill is erected thereon requiring a certain head of water, he may afterwards, in adding other machinery, or erecting other

Howard & another *v.* Proprietors of Locks and Canals.

mills, to be driven by the power obtained from the same current of water, add to the height of his dam, if he does not flow back on another mill, and raise a new and increased head of water, adapted to this new exigency; being liable to pay all damages from such increased flowing, in the same manner as when the original dam was raised. Without giving any opinion as to the nature, quality, and extent of this right, but supposing it to exist, if the mill-owner in such case had acquired a right by grant or otherwise to maintain his dam to a certain height without paying damages therefor, as in the present case, this is a right to be pleaded in bar, and decided in court, before the warrant issues to the sheriff, so as to limit the duty of the sheriff's jury to the assessment of damages done by such increased flowing, leaving that, to which the respondent has established a right, unaffected. We may assume this right to increase the height of his dam, by a mill-owner, to exist for the purposes of the present case, because without it these complainants would have no ground to maintain their complaint at all; not for damage for maintaining it to the height fixed by the former award, because that was satisfied and paid; nor for the increase, because it would be without a right acquired under the mill acts, and the redress would be by an action at law, and not by complaint.

It was argued by the complainants, that if the respondents did not establish in bar the entire right to maintain their dam, a warrant must go to the sheriff to impanel a jury; and then the powers of the jury would be regulated solely by the statutes, and they would have power to find and determine to what height the dam should be kept, and during what season of the year, without regard to the conventional rights of the parties, previously determined by reservation or grant. But we think there is no ground upon which such a position can be maintained. Parties are bound by their tenures and contracts, and have their vested rights; and the statutes are designed to declare and secure them, and not to defeat them, by the action of courts and juries.

It was intimated, but not strongly pressed, that the exercise of this power was to be influenced by a regard to the rights

of the public, and that a sheriff's jury would have a right and power to determine the height of the dam, and the portion of the year during which it should be kept up and closed, with reference to what they might suppose to be the public right. But we think this is quite a mistaken view of the purpose of impanelling a jury, under a complaint for flowing. It is purely a private proceeding, to vindicate the right of the complainant alone, without regard to the rights of others.

3. We have already stated substantially why, in our opinion, the form of the verdict was right, and properly adapted to the issue actually tried, as constituted by the plea of the general issue, modified and restricted by the specification of defence filed with it.                    *Exceptions overruled.*